**\*NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
JOHN BRANDT, *pro se*, :
:
Plaintiff, : Civil Action No. 09-5367 (FLW)
:
:
v. :
:
TRENTON PSYCHIATRIC : **OPINION**
HOSPITAL, *et al.*, :
:
Defendants. :
:
_____:

**WOLFSON, United States District Judge:**

Presently before the Court is a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) filed by Defendants Trenton Psychiatric Hospital ("TPH"), Lawrence Rossi, Dwight Sweezey, Michael Siglag, Teresa McQuaide, Jennifer Velez and Jonathan Poag ("Defendants"). (Docket Entry No. 10.) *Pro se* Plaintiff John Brandt ("Plaintiff") filed Opposition. (Docket Entry No. 13.) The underlying Complaint alleges violations of Plaintiff's Fourteenth Amendment Due Process rights pursuant to 42 U.S.C. §1983. Plaintiff brings claims against Defendants Rossi, Sweezey and Siglag in their individual and official capacities and against Defendants Velez, Poag and Mcquaide in their official capacities. (Compl. Intro.) For the reasons set forth below, the Court will abstain from exercising jurisdiction over Plaintiff's injunctive and declaratory claims and will stay Plaintiff's monetary claims against Defendants Rossi, Sweezey and Siglag in their individual capacities. Based on the Eleventh Amendment, the claims against TPH will be dismissed, and since Defendants Velez, Poag and Mcquaide are only named in their official capacities, they will be dismissed from the case as well.

## I. FACTUAL BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review. The Court will recount only those facts relevant to this Motion. Plaintiff is a psychiatric patient who has been involuntarily committed to TPH by the New Jersey Superior Court since June 2003 after being found not guilty by reason of insanity for criminal charges of burglary, criminal mischief, and criminal trespass as a result of breaking into his ex-girlfriend's college dormitory room and, in the midst of a dispute with her, destroying her property. (Compl. ¶8; *Brandt v. Monte*, 626 F.Supp.2d 469, 472 (D.N.J. 2009); *see* N.J.S.A. 2C:4-8(b)(3) ("[i]f the court finds that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself, it shall commit the defendant to a mental health facility approved for this purpose by the Commissioner of Human Services to be treated as a person civilly committed")). At TPH and all other state psychiatric institutions, New Jersey's regulations regarding "Levels of Supervision" ("LOS") determine the amount of supervision a patient requires. Patients are assigned to Levels I-IV, with Level I requiring the most supervision and Level IV requiring the least supervision. N.J.A.C. 10:36-1.5-1.8.

An individual who is committed as a result of being found not guilty by reason of insanity, is considered a "special status patient" according to the psychiatric hospital regulations. N.J.A.C. 10:36-1.2. The regulations provide for certain procedures to be followed with regard to a special status patient. Specifically, treatment team recommendations to decrease supervision of a "special status patient" are forwarded to a Special Status Patient Review Committee ("SSPRC"). N.J.A.C. 10:36-2.3. The SSPRC Chairperson may designate a committee member to interview the patient prior to the committee review whenever, in his or her judgment, "the situation warrants." *Id.* One of the treatment

team members "familiar with the current level recommendation" meets with the SSPRC during their review process. *Id.* The SSPRC recommendation is forwarded to the Clinical Director. *Id.* The Clinical Director/Medical Director must endorse any recommendation prior to its implementation and within two working days of receipt of the recommendation. *Id.*

TPH staff placed Plaintiff under the care of the East 2 Treatment Team, which consisted of: psychiatrist Abdul Kazi; psychologist Sean Wasliewski; social worker Justine Seman; and program coordinator Stuart Fenster. (*Id.* at ¶ 10.) It was the professional opinion of the East 2 Treatment Team that Plaintiff only needed to be placed on Level II for a two month period. (*Id.* at ¶11.) However, when the East 2 Treatment Team recommended to the SSPRC that he be placed on Level II for two months before being elevated to the less restrictive Level III, the SSPRC denied the Treatment Team's recommendation and instead recommended that Plaintiff be placed on partial Level II for two months and full Level II for two months. (*Id.* at ¶12.) The SSPRC consists of Defendants Lawrence Rossi, Dwight Sweezey and Michael Siglag. (*Id.* at ¶13.)

Since Plaintiff is involuntarily committed as a result of his being found not guilty by reason of insanity, Plaintiff is considered to be under *Krol*[1] status. (*Id.* at ¶8.) As a result, the recommendation of the SSPRC must be approved by court order, pursuant to N.J.A.C. 10:33-1.1, *et seq.* (*Id.* at ¶14.) Plaintiff and his treating physician went before the New Jersey Superior Court on June 8, 2009, and the only recommendation his treating psychiatrist was allegedly permitted to make to the Court was the recommendation that was authorized by the SSPRC. (*Id.* at ¶15.) At that hearing, Plaintiff's *Krol* judge ordered that Plaintiff may be increased to Level II in a two part process at the discretion of the treatment team and that if a successful completion of the two part process occurs before the next scheduled court

---

[1] *State v. Krol*, 68 N.J. 236 (1975).

date, then an interim court date may be requested. (*Id.* at ¶16.) Plaintiff is not challenging the June 8, 2009 ruling of the state court. (*Id.* at ¶26.)

In September 2009, Plaintiff's treatment team went before the SSPRC and requested that Plaintiff's status be increased to Level III and that the SSPRC petition the Court for said increase. (*Id.* at ¶17.) SSPRC denied the request and extended Plaintiff's Level II status for an additional two months. (*Id.* at ¶18.) The members of the SSPRC have never met nor evaluated Plaintiff nor given any reason for their decision to deny Plaintiff's increase to Level III. (*Id.* at ¶19.) According to Plaintiff, Defendants' failure to act caused Plaintiff undue harm. (*Id.* at ¶20.) Plaintiff also contends that he was not given a pre-deprivation hearing prior to the SSPRC's denial of the requested increase. (*Id.* at ¶21.)

Plaintiff alleges that the actions of Defendants Lawrence Rossi, the medical director, and the members of SSPRC in denying Plaintiff's treatment team recommendation without evaluating or examining Plaintiff is a violation of Plaintiff's substantive due process rights under the Fourteenth Amendment. (*Id.* at ¶28.) Plaintiff alleges that these actions denied him his right to the "least restrictive setting" pursuant to N.J.S.A. 30:4-24.2(d)(3) and (e)(2). (*Id.*) Plaintiff also alleges that by Defendants not following procedures outlined in N.J.A.C. 10:36-1.1 *et seq.*, they violated Plaintiff's procedural due process rights under the Fourteenth Amendment. (*Id.* at ¶29.) Plaintiff also alleges that he was not given notice or a chance to contest the action of the SSPRC, which violated his "federal right to the least restrictive setting pursuant to N.J.S.A. 30:4-24.2(e)(2) without due process of law pursuant to the 14th Amendment of the U.S. Constitution." (*Id.* at ¶30.) Plaintiff also alleges that under N.J.S.A. 2C:4-8(3), individuals that are found not guilty by reason of insanity are to be civilly committed under the same standards as any other civilly committed individual, however, N.J.A.C. 10:36-1.1, *et seq.* establishes standards that treat those committed under N.J.S.A. 2C:4-8(3) differently than those not,

4

which violates the Equal Protection Clause of the Fourteenth Amendment.  (*Id.* at ¶31.)

In his complaint, Plaintiff seeks the following relief: (1) a declaration that the acts and omissions described in Plaintiff's Complaint violated Plaintiff's rights under the Constitution and laws of the United States; (2) judgment in favor of Plaintiff for compensatory and punitive damages, against each Defendant, jointly and severally in the amount of one million dollars; (3) and the entry of an injunction to enjoin the enforcement of N.J.A.C. 10:36-1.1. *et seq.*   (*Id.* at ¶33.)

## II.  DISCUSSION

### A. Legal Standard

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1968 (quoting *Conley*, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965.  As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of'

the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965).

In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211.

## B. Analysis

Defendants have moved to dismiss the Complaint on several grounds: (1) the Court should abstain from hearing the case based on the *Younger* theory of abstention; (2) Plaintiff's claims against TPH should be dismissed because TPH is not a "person" under 42 U.S.C. §1983; (3) Plaintiff's claims against the Defendants in their official capacity are barred by sovereign immunity; (4) the Complaint fails to state a cognizable cause of action under *Twombly*; (5) Defendants Rossi, Siglag and Sweezey are entitled to qualified immunity; (6) the regulations governing the level of supervision for special status patients do not violate due process; and (7) the regulations governing the level of supervision for special status patients do not violate equal protection.

## 1. *Younger* Abstention

Defendants argue that Plaintiff's due process and equal protection claims must be dismissed pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) because Plaintiff had a full and fair opportunity to

litigate these claims at his state court *Krol* hearing. (Defs.' Br. 12.) Defendants further argue that there is a continuing court proceeding because Plaintiff's *Krol* status and Level of Supervision are periodically reviewed by a state court. (*Id.*) Defendants further argue that the state court proceedings implicate an important state interest. (*Id.*) In opposition, Plaintiff argues that he is not challenging the decision made by the *Krol* judge on June 8th, rather he is challenging the SSPRC's abuse of discretion with regard to determining his LOS. Plaintiff further argues that he cannot challenge the evidence that was submitted to the state court in the *Krol* hearing or the procedures that led to the recommendation to the court. (Pl.'s Supp. Opp'n. 2.) Plaintiff further argues that "any time the standard of care of a psychiatric committee is to be challenged, it has to be challenged by a civil cause of action." (*Id.*)

In *Younger*, the Supreme Court created an exception to the general rule that the pendency of state court proceedings is not a reason for a federal court to decline to exercise jurisdiction established by Congress. *See Yi Tang v. Tsui*, 416 F.3d 199, 201 (3d Cir. 2005). The *Younger* Court held that when federal adjudication of a particular claim would offend principles of comity by disrupting ongoing state proceedings, a federal court may abstain from exercising jurisdiction.[2] 401 U.S. at 43-44. The *Younger* abstention doctrine applies where a plaintiff seeks injunctive relief, declaratory relief, or both. *Samuels v. Mackell*, 401 U.S. 66, 73-74, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (barring declaratory relief under *Younger* abstention); *Younger*, 401 U.S. at 41 (barring injunctive relief). A federal court must abstain from addressing requests for injunctive or declaratory relief against state court proceedings so long as the constitutional issues involved may be addressed adequately in the course of the state proceedings. *Samuels*, 401 U.S. at 73-74; *Younger*, 401 U.S. at 44.

---

[2] Though *Younger* dealt with a criminal matter, the Court has since expanded the abstention doctrine to include civil proceedings and state administrative proceedings. *Moore v. Sims*, 442 U.S. 415 (1979).

Three requirements must be satisfied before *Younger* abstention is appropriate: (1) there must be ongoing state proceedings that are judicial in nature and with which the federal proceedings will interfere; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise the federal claims. *Yi Tang*, 416 F.3d at 202. Even if each of the above elements are satisfied, abstention is not appropriate if the plaintiff establishes that "extraordinary circumstances exist ... such that deference to the state proceedings will present a significant and immediate potential for irreparable harm to the federal interests asserted." *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002).

**a. Ongoing State Proceeding**

The Court finds that *Younger* abstention applies to the facts of this case and requires that the Court abstain from exercising jurisdiction over Plaintiff's claims for injunctive and declaratory relief. First, it is clear that there is an ongoing state proceeding. *See In re Commitment of M.M.*, 871 A.2d 707, 710 (N.J.Super. A.D. 2005) ("[c]onsequently, the procedure was established whereby defendants committed after an NGI finding are reviewed on a periodic basis under the same standards as those applied to civil commitments generally...[a]fter the defendant is committed, periodic review hearings (*Krol* hearings) are held in a criminal proceeding on notice to the prosecutor to determine if continued involuntary commitment is warranted" (internal citation omitted) (citing *In re Commitment of W.K.*, 159 N.J. 1, 4 (1999)).

More specifically, in the state court order from Plaintiff's August 2009 *Krol* hearing, the Court set Plaintiff's next *Krol* hearing for December 14, 2009. (Certification of Assistant Prosecutor Karen Gwynn, "Gwynn Cert," Ex. 1.) It appears to the Court, and Plaintiff has not argued to the contrary, that for the duration of his commitment under *Krol*, Plaintiff will undergo periodic reviews in state court

to determine whether he must still be committed and to what level of supervision he should be assigned. Further, at the time that Plaintiff filed his complaint, October 21, 2009, his next state court hearing date had already been set.

Therefore, the Court finds that there is an ongoing state proceeding and the first prong of *Younger* has been met. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999)(citing *Nelson v. Murphy*, 44 F.3d 497, 501-02 (7th Cir. 1995) (finding continuing criminal court supervision of persons found not guilty by reason of insanity, which includes mandatory review of treatment plan every sixty days, is an ongoing proceeding for *Younger* analysis); *see also Greist v. Norristown State Hosp.*, 1997 WL 661097, at *9 (E.D.Pa. October 22, 1997)("the initial order of involuntary commitment [pursuant to a finding of not guilty by reason of insanity] and subsequent annual review of plaintiff's status by the [state court] constitute an ongoing state judicial proceeding to which the plaintiff is a party.")

To the extent that Plaintiff argues that there is not an ongoing state proceeding because his June 8, 2009 *Krol* hearing has concluded, the Court notes that "[f]or *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in midprocess would demonstrate a lack of respect for the State as sovereign." *O'Neill v. City of Philadelphia*, 32 F.3d 785, 790 (3d Cir. 1994) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369, 109 S.Ct. 2506, 2519, 105 L.Ed.2d 298 (1989)). Thus, "a necessary concomitant of *Younger* is that a party must exhaust his state appellate remedies before seeking relief in the District Court." *Id.* (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975). Plaintiff did not appeal the findings by the judge in Plaintiff's *Krol* hearing, and although Plaintiff states that he is not challenging those findings, that simplistic

statement does not resolve the inquiry. Plaintiff is challenging the process by which a recommendation regarding his status was made to the state court, as well as the proceedings in the state court, which he claims limited his right to present evidence. Clearly, each of the challenges asserted by Plaintiff are inextricably intertwined with the *Kroll* hearing and what underlies it, and thus, an appeal should have been brought in the state court. *See infra,* pp. 10-11. As a result, Plaintiff has not exhausted his state appellate remedies and his state proceeding is still ongoing.

**b. Important State Interests**

The Court also finds that the second prong of *Younger* has been met. Plaintiff's *Krol* hearings implicate important state interests, as they are controlled by state law and statute and approved by state courts. Further, Plaintiff was found not guilty by reason of insanity and committed as a result of a violation of state law. As such, the Court finds that there is an important state interest implicated. *See Greist*, 1997 WL 661097, at *10 (citing *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 463 (3d Cir.1996)).

**c. Adequate Opportunity to Raise the Federal Claims**

The third prong of *Younger* has also been met. Though Plaintiff shrewdly attempts to argue that he is not challenging the findings of the state court's June 8, 2009 findings, the Court nevertheless finds that Plaintiff's federal claims could be raised in the state court proceedings. According to the New Jersey Court Rules governing civil commitment hearings, which apply to those committed as a result of a finding of not guilty by reason of insanity, the "[t]he patient, through counsel, shall have the right to present evidence and to cross-examine witnesses [at the initial and periodic hearings.]" N.J. CT. R. 4:74-7; N.J. CT. R. 3:19-2. Further, the New Jersey Supreme Court has held that "the committee in these [*Krol*] proceedings enjoys rights of procedural and substantive due process comparable to those

available in any judicial proceeding where liberty is at stake." *State v. Fields*, 77 N.J. 282, 306 (1978).

At the June 8th *Krol* hearing, Plaintiff was represented by a public defender. (Gwynn Cert, Ex. 1.) The Court cannot find any reason, and Plaintiff has not provided any specific reason, as to why Plaintiff's attorney would not have been able to raise the issues in the instant complaint with the judge in the state court proceedings; specifically, why Plaintiff's attorney would not have been able to raise issue of the difference in opinion of Plaintiff's treatment team and the SSPRC and the alleged due process issues with the regulations. Plaintiff argues in his opposition that he is unable to raise these issues in the state court proceedings because it is not a "civil cause of action," however committed patients have previously raised due process and constitutionality issues when appealing their commitment orders. *See e.g. In re Commitment of W.Z.*, 339 N.J.Super. 549, 571 (N.J.Super.App. Div. 2001); *Matter of Commitment of J.W.*, 288 N.J.Super. 197, 201 (N.J.Super. App.Div.1996); *In re Commitment of R.O.M.*, 2008 WL 5263227, at *1 (N.J.Super. App.Div. 2008); *Matter of Commitment of J.W.*, 288 N.J.Super. 197, 202 (N.J.Super. App.Div. 1996). Allowing Plaintiff to now argue that the process used by the SSPRC was flawed, when he did not raise those issues at his June 8th or any subsequent *Krol* hearings, would effectively allow him to circumvent the purpose underlying the state court proceedings. If Plaintiff believes that the recommendations or decisions of the SSPRC were inappropriate or that the state court judge's conclusions were violative of his due process rights, the time to raise such arguments was at his *Krol* hearing, and then through an appeal in the state courts. Therefore, because Plaintiff, through his counsel, could raise these issues in his periodic state court hearings, and could file an appeal therefrom, the Court finds that the third and final prong of *Younger* has been met. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[a]ccordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should

assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary").

Finally, no extraordinary circumstances exist in this case such that deference to the state proceedings will present a significant and immediate potential for irreparable harm to the federal interests asserted. As such, the Court will abstain from exercising jurisdiction over Plaintiff's claims for injunctive and declaratory relief.[3]

Though the Court is abstaining from exercising jurisdiction over Plaintiff's declaratory and injunctive claims, the Court will stay Plaintiff's claims for monetary relief against Defendants Rossi, Sweezey and Siglag in their individual capacities, as it appears that such relief would not be available in the state proceedings. *Howard v. New Jersey Div. Of Youth and Family Services*, 2010 WL 4249668, at *3 (3d Cir. October 28, 2010) (citing *Williams v. Hepting*, 844 F.2d 138, 144-45 (3d Cir.1988) ("a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings"). While the stay is pending, the Court will administratively terminate Plaintiff's monetary claims against Defendants Rossi, Sweezey and Siglag in their individual capacities. *See Peck v. Township of Manchester*, 2008 WL 4699780, at *1 (D.N.J. October 24, 2008)("it appearing that an administrative termination of the Federal Action will not be the equivalent of a dismissal of the complaint with prejudice, and would be issued pursuant to the Court's inherent power to control the docket and in the interests of judicial economy")(citing *Delgrosso v. Spang & Co.*, 903 F.2d 234, 236 (3d Cir. 1990) (stating administrative termination not final determination, as it "permits reinstatement

---

[3]The Court also notes that in a previous case filed by Plaintiff, though the Court ultimately dismissed the complaint on qualified immunity grounds, it also noted that the three criteria required for *Younger* abstention were present at the time that Plaintiff filed his complaint. *See Brandt v. Monroe*, 2006 WL 1468394, at *4, n.6 (D.N.J. May 24, 2006).

and contemplates the possibility of future proceedings", and "does not purport to end litigation on the merits").

## 2. Claims Against TPH

The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Absent an explicit waiver of Eleventh Amendment immunity, a state may not be sued in the federal courts. *Edelman*, 415 U.S. at 673. Moreover, Eleventh Amendment immunity extends to litigation against departments or agencies of the State. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir.1981).

Here, since TPH is a hospital operated by the State through its Department of Human Services, the Eleventh Amendment immunity applies, and Plaintiffs' 1983 claims against it must be dismissed. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984).

## 3. Official Capacity Claims

Plaintiff is suing Defendants Jennifer Velez, Commissioner of the Department of Human

13

Services; Jonathan Poag, Director of Division of Mental Health Services; and Teresa McQuaide, Chief Executive Officer of Trenton Psychiatric Hospital, in their official capacities only. (Pl.'s Compl. ¶25.) Defendants Siglag, Sweezey and Rossi are named in their official and individual capacities. Defendants argue that Plaintiff's claims against the Defendants in their official capacities must be dismissed because sovereign immunity bars suits against State officials in their official capacity because such a suit is the same as a suit against the State. (Defs.' Br. 13.) In Opposition, Plaintiff argues that the Defendants are named in their official capacities because he is seeking injunctive relief to correct the regulations.

Absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). "Although an individual may not sue the state for monetary damages, under the doctrine of *Ex parte Young*, a plaintiff may challenge the constitutionality of a state law by suing a state official acting in his official capacity for injunctive relief." *Alston v. Parker*, 2007 WL 1349303, at *7 (D.N.J. May 02, 2007) (citing *Ex parte Young*, 209 U.S. at 159-160; *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (stating that "official-capacity actions for prospective relief are not treated as actions against the State"); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir.2002) (stating that purely prospective relief against state officials for ongoing violations of federal law is available under the "legal fiction" of *Ex parte Young*).

As stated above, the Court will abstain from exercising jurisdiction over Plaintiff's claims for declaratory and injunctive relief. Since Defendants Velez, Poag and McQuaide are named in the Complaint in their official capacities due to the request for injunctive relief and the Court has abstained from exercising jurisdiction over said claims, Defendants Velez, Poag and McQuaide will be dismissed

14

from this case. Further, the claims against Defendants Siglag, Sweezey and Rossi in their official capacities will also be dismissed as official capacity claims for monetary damages are barred by the Eleventh Amendment. The only claims that remain which will be stayed and administratively terminated are those claims for monetary damages against Defendants Siglag, Sweezey and Rossi in their individual capacities.

**4. Defendants' Remaining Grounds for Dismissal**

As the Court has already abstained from exercising jurisdiction over Plaintiff's claims for declaratory and injunctive relief and will stay and administratively terminate Plaintiff's claims for monetary relief, it is unnecessary for the Court to address the remainder of Defendants' arguments in great detail. However, the Court notes that Plaintiff has alleged facts sufficient to support his claims under *Twombly* and the Complaint would not be dismissed on that ground.

**III. CONCLUSION**

For the reasons stated above, the Court will abstain from exercising jurisdiction over Plaintiff's claims for declaratory and injunctive relief. As such, Defendants Velez, Poag and McQuaide will be dismissed from the case. Plaintiff's claims against Defendants Siglag, Sweezey and Rossi in their official capacities will be dismissed. The Court will stay and administratively terminate the only claims which remain: the individual capacity claims for monetary damages against Defendants Siglag, Sweezey and Rossi. Further, the Court will dismiss the claims against TPH. An appropriate order will follow.


    /s/ Freda L. Wolfson
**FREDA L. WOLFSON**
**UNITED STATES DISTRICT JUDGE**

Dated: December 22, 2010